# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

DONALD CRANFORD,                      :

    Plaintiff,                      :

vs.                                  :       CA 05-0752-C

JO ANNE B. BARNHART,                 :
Commissioner of Social Security,
                                      :
      Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security terminating his entitlement to disability insurance benefits and supplemental security income as of January, 2003. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 16 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case . . . and order the entry of a final judgment, and conduct all post-judgment proceedings."); *see also* Doc. 17 (order of

reference)) Upon consideration of the administrative record, plaintiff's proposed report and recommendation, the Commissioner's proposed report and recommendation, and the parties' arguments at the August 23, 2006 hearing before the Court, it is determined that the Commissioner's decision terminating benefits should be reversed and remanded for further proceedings not inconsistent with this decision.[1]

Plaintiff alleges continuing disability due to degenerative disc disease, depression, a personality disorder, history of left arm injury with nerve damage, and a history of lymphoma. The Administrative Law Judge (ALJ) made the following relevant findings:

> 2.     The claimant was found disabled within the meaning of the Social Security Act beginning May 15, 1996. Upon Continuing Disability Review, the claimant's disability was found to have ceased effective November 2002, and his entitlement to disability insurance benefits and his eligibility for supplemental security income benefits terminated January 2003.
>
> 3.     The claimant has not engaged in substantial gainful activity since the Comparison Point Decision.
>
> 4.     The claimant has degenerative disc disease, depression, a personality disorder, a history of left arm injury with nerve

---

[1]     Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (Doc. 16 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

damage and a history of lymphoma, which are "severe" impairments under the Act.

5.     The claimant's impairments, when considered individually and in combination, do not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.

6.     The evidence establishes that there has been improvement in the claimant's impairments, and such improvement is related to the ability to work.

7.     No exception to the medical improvement standard applies.

8.     The claimant possesses the residual functional capacity to perform light unskilled work activity. Specifically, the claimant can: occasionally lift and/or carry up to 20 pounds at one time; frequently lift and/or carry up to 10 pounds; stand and/or walk at least six hours in an eight-hour workday; sit at least six hours in an eight-hour workday; frequently push and/or pull; occasionally climb, balance, stoop, kneel, crouch and crawl; reach in all directions (including overhead), handle, finger and feel at will; perform simple one and two-step tasks; interact appropriately with others (i.e., the general public, supervisors and co-workers); and respond properly to routine changes in the work setting. The claimant has no visual limitations or communicative restrictions. The claimant has the ability to work in environments where he does not have to endure concentrated exposure to extreme cold, extreme heat, fumes, odors, dusts, gases, poor ventilation and workplace hazards (e.g., moving machinery and exposed heights). The claimant has no limitation in his capacity to work in environments containing wetness, humidity and noise. The claimant has a "mild" limitation in performing daily activities, maintaining social functioning and maintaining concentration, persistence or pace. The claimant would have no episodes of extended decompensation during his attempts at performing

work and work-like activities.

9.     The claimant has past relevant work as a construction laborer.

10.     The claimant's assertions relative to symptomatology, functional limitations and restrictions of activities of daily living have been considered in light of the factors set forth in 20 C.F.R. §§ 404.1529 and 416.929 and Social Security Ruling 96-7p, and are found to lack corroboration or substantiation in the medical evidence, and are not credible as to a disabling impairment.

11.     The claimant is unable to perform his past relevant work.

12.     Given the claimant's vocational profile and residual functional capacity, he can be expected to perform a significant number of occupations existing in the national economy. Examples of such jobs include, but are not limited to, work as a bench assembler, non-construction laborer and sorter/grader.

13.     It is the claimant's responsibility to provide medical evidence that supports his alleged disability. See *Nathan L. Ellison v. Jo Anne B. Barnhart*, supra. The claimant has failed to meet this burden in this cause.

14.     The claimant's disability ceased November 2002, and he has not been under a disability, as defined in the Social Security Act, since such time. The claimant's entitlement to disability insurance benefits and his eligibility for supplemental security income benefits terminated as of January 2003 (20 C.F.R. §§ 404.1594(f)(8) and 416.994(b)(5)(vii)).

(Tr. 32-33)  The Appeals Council affirmed the ALJ's decision (Tr. 8-9) and

thus, the hearing decision became the final decision of the Commissioner of

Social Security.

4

## **DISCUSSION**

The standard for termination of benefits in this circuit has long been established. *See McAulay v. Heckler*, 749 F.2d 1500 (11th Cir. 1985).

> This court has held that there can be no termination of benefits unless there is substantial evidence of improvement to the point of no disability. *Simpson v. Schweiker*, 691 F.2d 966, 969 (11th Cir. 1982). Additionally, this court has held that a comparison of the original medical evidence and the new medical evidence is necessary to make a finding of improvement. *Vaughn v. Heckler*, 727 F.2d 1040, 1043 (11th Cir. 1984).

*Id*. Plaintiff contends that the following errors were made in this case: (1) the ALJ failed to fully and fairly develop the record in a case where he was not assisted by legal counsel; (2) the ALJ failed to pose a proper hypothetical question to the vocational expert ("VE"); and (3) the ALJ erred in finding that he experienced medical improvement to the extent he regained the residual functional capacity to perform light work as of November, 2002. Because the Court finds that the ALJ failed to pose a proper hypothetical question to the vocational expert and did not have substantial support in the record for his conclusion that plaintiff can perform the physical requirements of light work, this Court does not address the first assignment of error raised by the plaintiff. *See Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985) ("Because the 'misuse of the expert's testimony alone warrants a reversal,' we do not

consider the appellant's other claims.").

It is clear in this circuit that the Commissioner of Social Security must develop "a full and fair record regarding the vocational opportunities available to a claimant." *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989) (citation omitted). The Commissioner must articulate specific jobs that the claimant can perform given his age, education and work history, if any, "and this finding must be supported by substantial evidence, not mere intuition or conjecture." *See id.* (citation omitted) One means by which the Commissioner can satisfy her fifth-step burden is through the testimony of a vocational expert. *Pendley v. Heckler*, 767 F.2d 1561, 1562 (11th Cir. 1985)*; cf. MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986) (preferred method of demonstrating job availability is through a VE's testimony). However, if the hypothetical question posed to the VE does not comprehensively described the claimant's impairments, the expert's testimony does not constitute substantial evidence that other jobs exist in significant numbers in the national economy that the claimant can perform. *See Pendley, supra* ("'[U]nless there was vocational expert testimony concerning the availability of jobs for a person with the claimant's educational level, work skills and experience and physical limitations, the decision of the ALJ, based significantly on the expert

testimony, would be unsupported by substantial evidence.'").

In this case, plaintiff contends that the primary hypothetical posed to the VE, to which the VE identified light jobs existing in significant numbers in the regional and national economies (Tr. 54-55), did not comprehensively describe his impairments inasmuch as the question merely assumed the claimant's ability to perform entry-level light jobs and did not include the significant non-exertional limitations identified by the ALJ in his decision (*compare* Tr. 54 ("Let's assume that you got a younger individual that has no transferrable skill, that he is limited to light work. I want you to only consider those jobs that exist in significant number, and only those entry level jobs.") *with* Tr. 32-33, Finding No. 8 ("The claimant possesses the residual functional capacity to perform light unskilled work activity. Specifically, the claimant can: occasionally lift and/or carry up to 20 pounds at one time; frequently lift and/or carry up to 10 pounds; stand and/or walk at least six hours in an eight-hour workday; sit at least six hours in an eight-hour workday; frequently push and/or pull; occasionally climb, balance, stoop, kneel, crouch and crawl; reach in all directions (including overhead), handle, finger and feel at will; perform simple one and two-step tasks; interact appropriately with others (i.e., the general public, supervisors and co-workers); and respond properly to routine

7

changes in the work setting. The claimant has no visual limitations or communicative restrictions. The claimant has the ability to work in environments where he does not have to endure concentrated exposure to extreme cold, extreme heat, fumes, odors, dusts, gases, poor ventilation and workplace hazards (e.g., moving machinery and exposed heights). The claimant has no limitation in his capacity to work in environments containing wetness, humidity and noise. The claimant has a "mild" limitation in performing daily activities, maintaining social functioning and maintaining concentration, persistence or pace. The claimant would have no episodes of extended decompensation during his attempts at performing work and work-like activities.")) Defendant agreed during oral argument that the hypothetical posed by the ALJ was not a very good or comprehensive question, and that the question did not implicitly include any of the environmental restrictions found, but requested the opportunity to research the Dictionary of Occupational Titles to determine if there are bench assembler, laborer, and sorter/grader jobs that fit plaintiff's residual functional capacity (both exertional and non-exertional impairments and limitations).[2] The Court finds that this request is not well

---

[2]     The defendant requested an opportunity to research the DOT because of evidence from the hearing that the VE was relying on the DOT in testifying and that his testimony was consistent with the DOT. (See Tr. 54 ("If you deviate from [the] DOT, please let me know when and why.")) The Court held this request in abeyance and now finds that same is due to be

taken for the reasons previously articulated and, as well, because a granting of

the request would ultimately place this Court in the position of invading the

province of the administrative process by making findings of fact that are

appropriately made by the Commissioner of Social Security. Moreover, as

noted in *Pendley, supra*, this Court "cannot assume that the vocational expert

would have answered in a similar manner had the ALJ instructed him to

consider all of the appellant's severe impairments." 767 F.2d at 1563.

Accordingly, like the appellate court in *Pendley*, this Court must conclude that

the Commissioner has failed to establish her fifth-step burden of proving that

plaintiff is capable of performing other work which exists in substantial

numbers in the national economy. This case must be remanded to the

Commissioner of Social Security for further proceedings, including another

hearing and the fifth-step testimony from a vocational expert identifying what

---

**DENIED** for a number of reasons. First, the Court has looked at the DOT and at once notes that there are more than one hundred DOT listed jobs falling under the bench assembler, laborer, sorter and grader designations and, therefore, it would be impossible for either the defendant or this Court to identify the DOT sections the VE had in mind when he was testifying. This is particularly the case with the laborer jobs identified by the VE (the category with the most availability) because all the non-construction laborer DOT jobs the undersigned surveyed (*e.g.,* DOT #s 410.684-010, 411.687-018, 529.686-050, 579.667-010, 589.686-026, 732.687-030, 788.687-066, 789.687-090) were designated exertionally as either medium or heavy. In addition, the request assumes that the ALJ correctly determined that the claimant's condition has improved to the point that he has the residual functional capacity to perform light work; however, the ALJ's RFC finding, as explained *infra*, is not supported by substantial evidence.

jobs,[3] if any, exist in substantial numbers in the national economy which plaintiff can perform.

## CONCLUSION

The Court **ORDERS** that the decision of the Commissioner of Social Security denying plaintiff benefits be reversed and remanded pursuant to sentence four of § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct.

---

[3]    In reaching the determination that plaintiff's condition has improved to the point that he can perform the exertional requirements of light work, the ALJ rejected the only physical capacities evaluation ("PCE") form completed by an examining or treating physician during the relevant time period. (*See* Tr. 26-27) Instead, the ALJ relied upon his own conclusory statements of what certain objective evidence established (Tr. 29 ("In reaching the determination of the claimant's residual functional capacity, the Administrative Law Judge has examined the objective evidence of record, including x-rays, M.R.I.s, C.T.s, physical examinations, laboratory analyses and additional diagnostic studies, which confirms that the claimant's impairments do not result in credible restrictions in excess of those described herein.")), as well as the consultative examination of Dr. Nayeem (*id.* ("Dr. Nayeem's most recent exam of the claimant, which is arguably the claimant's most detailed physical examination since the C.P.D., found the claimant's fine and gross manipulation to be normal, his muscle strength to be unimpaired and his range of motion in his cervical spine, lumbar spine, shoulders, elbows, forearms, hips, knees, ankles and wrists to be appropriate. Also, Dr. Nayeem related that the claimant's deep tendon reflexes and sensations were intact, he had no tenderness or spasm in his back and his muscle tone showed no evidence of atrophy. Also significant is that Dr. Nayeem indicated that 'it was quite obvious that he (claimant) was feeling and using the hands normally.'")). It is particularly troubling that the ALJ relied so heavily on the examination notes of Dr. Nayeem without following-up on Nayeem's recommendation that a neurological evaluation was necessary as well as possible nerve conduction studies. (Tr. 504) Moreover, in a case like the present one, where the issue is one of medical improvement to the point of no disability, an ALJ should be singularly reticent in making conjectures about residual functional capacity given this Court's stated position that an ALJ's RFC assessment must be supported by the residual functional capacity assessment of a treating or examining physician. On remand, the ALJ need obtain an RFC assessment from a treating or examining physician which supports his decision that there has been medical improvement in plaintiff's condition to the point that he can perform some level of substantial gainful work activity.

2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision.  The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shalala v. Schaefer,* 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this matter.

  **DONE** and **ORDERED** this the 1st day of September, 2006.

     s/WILLIAM E. CASSADY   
    **UNITED STATES MAGISTRATE JUDGE**

11